FILED

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

2017 JAN 31  PM 3: 12

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**FREESTYLE SLIDES, INC.,**
**a Florida Corporation,**

**CASE NO.:**
6:17-CV-169-ORL-41-GJK

        **Plaintiff,**

v.

**SUPER SWEET AIR, INC., d/b/a FUNAIR,**
**a Texas Corporation, NATIONAL MARINE**
**SUPPLIERS, INC., a Florida Corporation,**
**MARK ANASTASIA, an individual,**
**ERIC GOLDREYER, an individual,**

        **Defendants.**

_____/

### COMPLAINT

Plaintiff, FREESTYLE SLIDES, INC. ("FREESTYLE" or "Plaintiff"), a Florida corporation, by and through its undersigned attorneys, hereby sues Defendants, SUPER SWEET AIR, INC. d/b/a FUNAIR ("FUNAIR"), a Texas corporation, NATIONAL MARINE SUPPLIERS, INC. ("NATIONAL MARINE"), a Florida corporation, MARK ANASTASIA ("ANASTASIA"), an individual, and ERIC GOLDREYER ("GOLDREYER"), an individual (collectively "Defendants") and states the following as grounds:

### NATURE OF THIS ACTION

1.      This is an action for Trade Dress Infringement under 15 U.S.C. §1125(a), Copyright Infringement under 17 U.S.C §§101 *et. seq.,* False and Misleading Advertising under 15 U.S.C. §1125(a)(1)(b), Misleading Advertising under Fla. Stat. §817.41, Unfair and Deceptive Trade Practices under Fla. Stat. §§501.201 *et. seq.*, Conversion, Civil Conspiracy and Unjust Enrichment to stop Defendants' willful and malicious infringement of FREESTYLE's

intellectual property and other related rights which have caused and continue to cause significant damage to FREESTYLE's business and reputation.   Plaintiff seeks injunctive relief, monetary damages, exemplary damages and reimbursement of attorney's fees against Defendants.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff, FREESTYLE, is a Florida corporation duly incorporated under the laws of the State of Florida with a principal place of business located at 2399 26th Avenue North, St. Petersburg, Florida 33713.

3.      Defendant, SUPER SWEET AIR, INC. d/b/a/ FUNAIR is a Texas corporation duly incorporated under the laws of the State of Texas with a principal place of business located at 3801 N. Capital of Texas HWY Suite E-2, Austin, Texas 78746-1416.

4.      Defendant, NATIONAL MARINE SUPPLIERS, INC. is a Florida corporation duly incorporated under the laws of the State of Florida with a principal place of business located at 2800 SW 2nd Ave., Fort Lauderdale, Florida 33315.

5.      Defendant, MARK ANASTASIA, is the Vice President, Secretary and a Director of FUNAIR who resides in Orlando, Florida with a last known address of 5322 Locksley Ave., Orlando, Florida 32810.

6.      Defendant, ERIC GOLDREYER, is the President, CEO and Director of FUNAIR who resides in Austin, Texas with a last known address of 3004 Meandering River Court, Austin, Texas 78746.

7.      This Court has subject matter jurisdiction over the trade dress infringement, copyright infringement and false advertising claims under 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. §1367.

2

8.      This Court has personal jurisdiction over Defendant, FUNAIR pursuant to Fla. Stat. §§48.193(1)(a)(1), 48.193(1)(a)(2) and 48.193(2)  in that FUNAIR is operating, conducting, engaging in and carrying on a business in this state, has agents (NATIONAL MARINE & ANASTASIA) in this state, committed a tortious act within this state, Plaintiff was harmed in this state, and FUNAIR is engaged in substantial and not isolated activity within this state.

9.      This Court has personal jurisdiction over Defendant, NATIONAL MARINE pursuant to Fla. Stat. §§48.193(1)(a)(1), 48.193(1)(a)(2) and 48.193(2)  in that NATIONAL MARINE is operating, conducting, engaging in and carrying on a business in this state, has as office located in this state, committed a tortious act within this state, Plaintiff was harmed as a result of the conduct in this state, and NATIONAL MARINE is engaged in substantial and not isolated activity within this state.

10.     This Court has personal jurisdiction over Defendant, ANASTASIA pursuant to Fla. Stat. §§48.193(1)(a)(1), 48.193(1)(a)(2) and 48.193(2) in that he resides in this state, is operating FUNAIR from this state, has committed a tortious act in this state, harmed Plaintiff in this state, and is engaged in substantial and not isolated activity in this district.

11.     This Court has personal jurisdiction over Defendant, GOLDREYER pursuant to Fla. Stat. §§48.193(1)(a)(1), 48.193(1)(a)(2) and 48.193(2)  in that he is operating, conducting, engaging in and carrying on a business in this state, he has an officer (ANASTASIA) and agents (ANASTASIA and NATIONAL MARINE) operating FUNAIR from this state, GOLDREYER has committed a tortious act in this state, harmed Plaintiff in this state, and he is engaged in substantial and not isolated activity in this state.

12.     Venue properly lies in this judicial district under 28 U.S.C. §§1391(b), 1391(c) and 1400(a) and in this Division pursuant to Local Rule 1.02(c) of the United States District

Court for the Middle District of Florida in that ANASTASIA, the driving force behind all of the claims asserted herein, resides in this very district. Moreover, all Defendants are subject to personal jurisdiction in this district, FREESTYLE was harmed in this district, and a substantial part of the events giving rise to the claims occurred in this district.

## STATEMENT OF FACTS AS TO ALL COUNTS

13.      FREESTYLE has been in business since 2002 and specializes in the manufacture and distribution of high quality inflatable slides for both land and sea.

14.      FREESTYLE came out with its first slide, THE HIPPO®, in April of 2002. THE HIPPO® was an instant success, is sold all across the world and has a very distinctive and registered (Registration No. 3,694,813) trade dress, as seen below:



(Photograph of THE HIPPO®)

4

15.     FREESTYLE's initial marketplace was the United States, but over the years it has expanded internationally.  Currently, FREESTYLE has dealers and/or sells directly into Canada, Australia, Europe, South America, Asia and Africa.

16.     FREESTYLE is based out of Florida, but also has offices and employees in China and South Africa and is known worldwide for its high quality inflatable products.

## RELATIONSHIP BETWEEN THE PARTIES

17.     Each of the Defendants was either a former employee, past potential client or past dealer of FREESTYLE's before teaming up together and conspiring to infringe on FREESTYLE's intellectual property rights, falsely advertise and promote FUNAIR's products, and compete in an unfair and deceptive manner.

*MARK ANASTASIA*

18.     ANASTASIA is a former employee of FREESTYLE's that worked for FREESTYLE in various capacities from 2004-2013.  In the beginning, ANASTASIA worked primarily as a consultant handling various issues, including, but not limited to sales, quality control and on site set ups.

19.     In March of 2008, FREESTYLE came up with its first design for a yacht slide for one of its clients.

20.     On or around the beginning of 2009, FREESTYLE asked ANASTASIA to assist with this new subset of its inflatable slide business.  Upon information and belief, this was the first time a yacht slide had ever been done, and FREESTYLE was the first to do it.

21.     ANASTASIA came on board full time and worked as an employee for FREESTYLE, selling both yacht slides and land-based slides from 2009-2013.  ANASTASIA's

title at the time was "Managing Director" and he worked closely with customers as well as the factory to fulfill yacht and land-based slide orders on behalf of FREESTYLE.

22.     On or around January of 2011, ANASTASIA moved to China to work in FREESTYLE's office located at its factory in Shan Dong, China.  During that time he was privy to FREESTYLE's confidential and proprietary information, including, but not limited to, customer lists and customer ordering history.  Additionally, he was provided access to all electronic files, including, but not limited to all CAD drawings and technical drawings for both the yacht and land-based slides.

23.     As will be discussed in more detail below, after being caught red handed setting up a competing company, diverting sales, and redirecting website traffic, ANASTASIA resigned from FREESTYLE in February of 2013.

*NATIONAL MARINE SUPPLIERS*

24.     NATIONAL MARINE entered into a Dealer Agreement with FREESTYLE on October 10, 2010 to sell FREESTYLE's inflatable slides throughout the United States.

25.     On July 12, 2013, NATIONAL MARINE terminated the Dealer Agreement in writing and shortly thereafter went into business with FUNAIR, ANASTASIA and GOLDREYER and became an official dealer for FUNAIR's inflatable products here in Florida.

26.     For a period of time after July 12, 2013 NATIONAL MARINE continued to utilize photographs of FREESTYLE's inflatable slides to sell competing products which were not manufactured or offered by FREESTYLE.  FREESTYLE contacted NATIONAL MARINE and demanded that such photographs come down and NATIONAL MARINE eventually complied with the requests.

***ERIC GOLDREYER***

27.     GOLDREYER is a former potential client of FREESTYLE's that contacted FREESTYLE back in February of 2012 regarding purchasing a CRUISER NLS, which is one of FREESTYLE's designs.   The parties corresponded back and forth, including ANASTASIA corresponding on behalf of FREESTYLE with GOLDREYER.

28.     GOLDREYER needed some additional time to complete his dock and did not follow up with FREESTYLE until February 26, 2013. At this time, ANASTASIA was no longer working for FREESTYLE, but he was copied on the email correspondence.

29.     Shortly thereafter, in July of 2013, GOLDREYER indicated to FREESTYLE that he was going to hold off on the project.

***FUNAIR***

30.     Surprisingly or not, just a few months later in September of 2013, ANASTASIA and GOLDREYER went into business together and started FUNAIR.

31.     FUNAIR directly competes with FREESTYLE in the inflatables industry by selling land-based slides, yacht slides as well as other inflatable products including, but not limited to, docks and pools.

32.     As will be discussed in more detail below, ANASTASIA, GOLDREYER, FUNAIR and NATIONAL MARINE conspired together to willfully and maliciously infringe on FREESTYLE's intellectual property rights and convert FREESTYLE's proprietary and confidential information for their own benefit and FREESTYLE is being damaged as a result of their willful and malicious conduct.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### *TRADE DRESS*

33.    As a result of the enormous success of THE HIPPO® slide and its distinctive trade dress, on or around 2009, FREESTYLE began developing additional slides for both land and sea to be sold all over the world.

34.    One of the most popular slides used on land, in addition to THE HIPPO®, is the TRIPPO®. The TRIPPO® trade dress is seen below:

| | |
|---|---|
| **TRIPPO®**<br><br>(Registration No. 4,888,000) |  |



(Photograph of the TRIPPO®)

35.    Plaintiff has been selling the TRIPPO® all around the world since at least as early as January of 2012. Consumers have come to recognize that the three dimensional inflatable slide with three lanes that all meet at the top, three crown-like configured landing beds wherein

the middle lane and landing bed extends out further than the right and left lanes and landing beds, and a lattice structure underneath the slide and on the back portion of the slide, is Plaintiff's trade dress and emanates from Plaintiff.

36.     The features of Plaintiff's trade dress in the TRIPPO®, as described above, are primarily non-functional in that there are plenty of ways to create an inflatable slide without creating one that has three lanes that meet at the top in the specific configuration shown above, crown-like landing beds wherein the middle landing bed and lane extends further than the right and left beds/lanes and a lattice structure underneath and on the back portion of the slide.

37.     Moreover, Plaintiff's trade dress in the TRIPPO® has acquired secondary meaning in the marketplace through Plaintiff's extensive advertising and promotion of the slide design, unsolicited advertising, sales figures, unsolicited media coverage, the length and manner of use and the extent to which the public identifies the TRIPPO® design with FREESTYLE.

38.     The most popular of the yacht slides are the CRUISER CS™, the CRUISER NLS+™ and the CRUISER LS™ seen below:

| | |
|---|---|
| CRUISER CS™ | |



(Photograph of the Cruiser CS™)

39.     Plaintiff has been selling the CRUISER CS™ all around the world since at least as early as January of 2012.  Consumers have come to recognize that the three dimensional inflatable slide with the backwards c-shaped curve wherein the side support tubes end in the shape of a triangle and there is a lattice structure underneath the slide in the middle portion of the slide, is Plaintiff's trade dress and emanates from Plaintiff.

40.     The features of Plaintiff's trade dress in the CRUISER CS™ as described above are primarily non-functional in that there are plenty of ways to create an inflatable slide without creating one that has a backwards c-shaped curve with side support tubes that end in the shape of a triangle and a lattice structure underneath.

41.     Moreover, Plaintiff's trade dress in the CRUISER CS™ has acquired secondary meaning in the marketplace through Plaintiff's extensive advertising and promotion of the slide, unsolicited advertising, sales figures, and unsolicited media coverage, the length and manner of use and the extent to which the public identifies the CRUISER CS™ design with FREESTYLE.

42.     Plaintiff's CRUISER NLS+™ is the highest seller of the yacht slides.



| CRUISER NLS+™ | |
|---|---|

(Photograph of the Cruiser NLS+™)

10

43.     Plaintiff has been selling the CRUISER NLS+™ all around the world since at least as early as February of 2011.   Consumers have come to recognize that the three dimensional inflatable slide with staggered-length tubes running down the sides of the slide wherein the staggered-length support tubes end in the shape of a triangle is Plaintiff's trade dress and emanates from Plaintiff.

44.     The features of Plaintiff's trade dress in the CRUISER NLS+™ as described above are primarily non-functional in that there are plenty of ways to create an inflatable slide without creating one with a squared-off runout and staggered-length tubes running down the sides of the slide wherein the support tubes end in the shape of a triangle.

45.     Moreover, Plaintiff's trade dress in the CRUISER NLS+™ has acquired secondary meaning in the marketplace through Plaintiff's extensive advertising and promotion of the slide, unsolicited advertising, sales figures, and unsolicited media coverage such that consumers easily and quickly recognize this slide as coming directly from the source behind the goods, FREESTYLE.

46.     Plaintiff's CRUISER LS™ is also one of Plaintiff's most popular yacht slides.



(Photograph of CRUISER LS™)

47.     Plaintiff has been selling the CRUISER LS™ all around the world since at least as early as January of 2009.  Consumers have come to recognize that the three dimensional inflatable slide with staggered-length tubes running down the sides of the slide wherein the support tubes end in the shape of a triangle and the support beam underneath is in the shape of an "L" is Plaintiff's trade dress and emanates from Plaintiff.

48.     The features of Plaintiff's trade dress in the CRUISER LS™ as described above are primarily non-functional in that there are plenty of ways to create an inflatable slide without creating one with staggered-length tubes running down the sides of the slide wherein the support tubes end in the shape of a triangle and a support beam underneath in the shape of an "L".

49.     Moreover, Plaintiff's trade dress in the CRUISER LS™ has acquired secondary meaning in the marketplace through Plaintiff's extensive advertising and promotion of the slide, unsolicited advertising, sales figures, and unsolicited media coverage such that consumers easily and quickly recognize this slide as coming directly from the source behind the goods, FREESTYLE.

50.     FREESTYLE's gross sales of all products have significantly grown each year since its launching back in 2003 growing from $259,188 in 2003 to $2,608,042 in 2015.

51.     Since its inception in 2003, FREESTYLE has spent at least $865,000.00 advertising its various slides, and the advertising includes depictions of the trade dress.

52.     Some of the trade shows at which each of the slides identified above have been advertised include:

   a.      International Association of Amusement Parks and Attractions (IAPPA) – 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, and 2016;

b.     National Association of RV Parks and Campgrounds (ARVC) – 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016;

c.     World Waterpark Association (WWA) – 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, and will be present at 2016;

d.     Caribbean Hotel Association (CHIC) – 2005, 2006, 2007

e.     Fort Lauderdale International Boat Show (FLIBS) - 2009, 2010, 2011, 2012, 2013, 2014, 2015, and will be present at 2016

f.     Monaco International Yacht Show 2010, 2011, 2012, 2013, 2014, 2015 and will be present at 2016

g.     Europe EAS Show 2016

53.    FREESTYLE is also currently an annual member of the following industry organizations which provide a Member Handbook/Supplier Guide each year to potential customers with Plaintiff's company contact information therein: (a) ARVC; (b) (IAPPA); and (c) WWA. FREESTYLE was previously a member of CHA.

54.    FREESTYLE has received awards over the years for its distinctive product designs, including, but not limited to the Pinellas County Emerging Entrepreneur Award, Recognizing Excellence in Pinellas County's Growing Businesses in the year 2007 as well as in the Guinness Book of World Records® for having the Tallest Slide in the World in 2016.

55.    FREESTYLE's customer base includes, but is not limited to, water parks, amusement parks, campgrounds, zoos, cruise lines, FEC's (Family Entertainment Centers), municipalities, yacht owners, yacht clubs, yacht charters, yacht builders and private entities.

56.    FREESTYLE has received numerous unsolicited letters and emails from customers praising applicant for its trade dress and outstanding products and service.

57.    FREESTYLE has also received unsolicited media coverage and been featured on the following news programs and in the following magazines and newspapers:

a.  Kid Nation
b.  Travel Channel – Extreme Playtime
c.  Fox 13 News, Tampa Bay
d.  Good Business Pinellas
e.  Various Newspaper articles around the world
f.  Several magazine editorials
g.  Several boating and yachting magazines
h.  You Tube®
i.  TradeWinds Resort TV Commercials
j.  Below Deck Reality Show
k.  Various entertainment magazines around the world
l.  Various other news channels around the world

58.  All of this advertising, sales, unsolicited media coverage and customer testimonials amount to secondary meaning in the marketplace such that when consumers see the TRIPPO®, CRUISER CS™, the CRUISER NLS+™ and the CRUISER LS™ trade dress they automatically think of the source behind the goods, FREESTYLE.

59.  Plaintiff also owns all common law rights in its trade dress for the CRUISER CS™, the CRUISER LS™, the TRIPPO™ and the CRUISER NLS+™.

***COPYRIGHT***

60.  In designing the slides referenced above, FREESTYLE created CAD drawings and other technical drawings which were used to advertise and promote the slides to potential customers.

61.  CAD Drawings for the original CRUISER CS™ were created on or around August of 2012. Technical drawings were created on September 12, 2012 and published in October of 2012. Such drawings were stored on FREESTYLE's server and used to promote and sell the CRUISER CS™.

62.  Physical copies of the drawings were kept in file cabinets in FREESTYLE's Florida and China offices. ANASTASIA had access to both the printed and electronic files.

63. Plaintiff filed and obtained a Copyright Registration for the original CRUISER CS™ drawings, which issued as Registration No. VA 2-021-738. A true and correct copy of the Copyright Registration is attached hereto as Exhibit "A".

64. CAD drawings for the original CRUISER NLS™ were created on or around January of 2011 and published in February of 2011. Such drawings were stored on FREESTYLE's server and used to promote and sell the CRUISER NLS™ and CRUISER NLS+™ slides.

65. Physical copies of the drawings were kept in file cabinets in FREESTYLE's Florida and China office. ANASTASIA had access to both the printed and electronic files.

66. Plaintiff filed and obtained a Copyright Registration for the original CRUISER NLS+™ drawings, which issued as Registration No. VA 2-022-208. A true and correct copy of the Copyright Registration is attached hereto as Exhibit "B".

67. CAD drawings for the original CRUISER SS™ were created on or around December of 2012 and published on December 11, 2012. Such drawings were stored on FREESTYLE's server and used to promote and sell the CRUISER SS™.

68. Physical copies of the drawings were kept in file cabinets in FREESTYLE's Florida and China office. ANASTASIA had access to both the printed and electronic files.

69. Plaintiff filed and obtained a Copyright Registration for the original CRUISER SS™ drawings, which issued as VA 2-021-721. A true and correct copy of the Copyright Registration is attached hereto as Exhibit "C".

70. Plaintiff owns all right, title and interest in and to the copyrights for the CRUISER NLS+™, the CRUISER CS™ and the CRUISER SS™.

## DEFENDANTS' WILLFUL AND MALICIOUS CONDUCT

71.     Prior to ANASTASIA's departure from FREESTYLE, he was caught red handed with another employee, Joe Wooden, setting up a competing business and website, attempting to compromise FREESTYLE's manufacturer in China and steal customers.

72.     Ocean Inflatables, LLC was a company started by the owner of FREESTYLE, Stephen Philp, in conjunction with ANASTASIA and Joe Wooden, who were both employees of FREESTYLE at the time.  Ocean Inflatables, LLC was incorporated in 2011 and its purpose was to sell other inflatable water products like inflatable ramps, rails and pools.

73.     On or around January of 2013, ANASTASIA and Joe Wooden registered Ocean Inflatable Concepts, Inc. in their names only and contacted the hosting company of one of FREESTYLE's website domains, oceaninflatables.com, and falsely stated that the integrity of the www.oceaninflatables.com website has been compromised and that all traffic needed to be directed to www.oceaninflatables.net, which was actually ANASTASIA's and Wooden's new website.

74.     ANASTASIA and Joe Wooden also diverted a customer that was meant for Ocean Inflatables, LLC to Ocean Inflatable Concepts, Inc., which resulted in a loss of business to Ocean Inflatables, LLC of close to $30,000.

75.     As a result of such conduct, Stephen Philp, as the owner of FREESTYLE and an owner of Ocean Inflatables, LLC, hired an attorney who sent a cease and desist letter to ANASTASIA and Joe Wooden on February 4, 2013 demanding that such conduct stop immediately.  A true and correct copy of the cease and desist letter is attached hereto as Exhibit "D"

76.     As a result of the letter, ANASTASIA resigned on February 5, 2013 and Joe Wooden was terminated immediately and FREESTYLE bought out his shares in the company.

77.     Shortly after ANASTASIA resigned and left FREESTYLE's office in China he emptied an entire file cabinet and took with him FREESTYLE's entire customer files, which included customer contact information, customer sales history, drawings, and specifications for the specific slides purchased by the customer. He also took with him copies of electronic files, namely, FREESTYLE's customer list, customer ordering history, CAD drawings, and technical drawings for FREESTYLE's land-based and sea-based inflatable slides.

78.     Upon information and belief, ANASTASIA copied the technical drawings and CAD drawings and used such drawings in association with his recent business venture, FUNAIR, constituting copyright infringement under 17 U.S.C. §101 *et. seq.*

79.     ANASTASIA also took copies of FREESTYLE's customer list and customer contact information and customer sales history shortly after he resigned from FREESTYLE, which all derive independent economic value for FREESTYLE and constitute confidential and proprietary information owned by FREESTYLE.

80.     ANASTASIA improperly converted FREESTYLE's confidential and proprietary information, diverted customers from FREESTYLE and leveraged FREESTYLE's intellectual property and reputation in the industry to further ANASTASIA and FUNAIR's business.

81.     This occurred sometime in 2014 when ANASTASIA teamed up with a former potential client of FREESTYLE's (GOLDREYER) as well as a former dealer (NATIONAL MARINE) to sell knock offs of FREESTYLE's world-renowned TRIPPO®, CRUISER CS™, CRUISER LS™, CRUISER SS™ and CRUISER NLS+™ slides.

82.     Not only did ANASTASIA improperly use, copy and create derivative works of FREESTYLE's copyrighted technical drawings to sell the knock off slides, but he also used the customer list he stole from FREESTYLE to contact customers and copied the ornamental designs of the slides which are protected by trade dress.

83.     Examples of FUNAIR's infringing slides underneath FREESTYLE's protected slides, are as follows:

*FREESTYLE*



*FUNAIR*



*FREESTYLE*



*FUNAIR*



*FREESTYLE*



*FUNAIR*



20

*FREESTYLE*



*FUNAIR*



84.     Given that FUNAIR's products are nearly identical to FREESTYLE's, FUNAIR is targeting the same consumers, the FUNAIR products are being distributed through the same channels of trade as that of FREESTYLE's, consumers have already been confused and

FUNAIR acted in bad faith; consumers are likely to be confused and think that FUNAIR's land and sea-based slides are approved, endorsed or sponsored by FREESTYLE.

85.     FREESTYLE has been damaged as a result of this trade dress infringement in that FREESTYLE has lost sales to FUNAIR as a result of FUNAIR's infringing conduct.

86.     NATIONAL MARINE is also infringing on the trade dress by acting as a dealer for FUNAIR and promoting and selling the infringing slides via their website and other advertising means. Examples of NATIONAL MARINE's promotion of the infringing trade dress are attached hereto as Exhibit "E".

87.     Given that FUNAIR's products, which are being sold via NATIONAL MARINE's website, are nearly identical to FREESTYLE's, NATIONAL MARINE is targeting the same consumers, the products are being distributed through the same channels of trade, consumers have already been confused and NATIONAL MARINE acted in bad faith; consumers are likely to be confused and think that NATIONAL MARINE's land and sea-based slides are approved, endorsed or sponsored by FREESTYLE.

88.     FREESTYLE has been damaged as a result of this trade dress infringement in that FREESTYLE has lost sales to NATIONAL MARINE as a result of NATIONAL MARINE's infringing conduct.

89.     FUNAIR and ANASTASIA are also engaging in acts of false and misleading advertising by falsely stating the following:

        a.     That ANASTASIA turned heads "with the first sealed air inflatable slide that hooks over yacht railings in 2009[1]," when in actuality it was FREESTYLE that turned heads with the first yacht slide in 2009;

---

[1] A true and correct copy of this false and misleading statement on ANASTASIA's profile page on www.funair.com is attached hereto as Exhibit "F."

b. That FUNAIR "has created more than 200 custom slides for super yachts across the globe[2]," when in actuality a large portion of those slides were actually created by FREESTYLE, not FUNAIR;

c. That ANASTASIA is the "inventor of the yacht slide[3]," when in actuality it is FREESTYLE that came up with the first design for the yacht slide and is thus the "inventor," not ANASTASIA;

d. That the yacht slide created for Lazy Z was ANASTASIA's "design" and his "invention[4]," when in actuality it was FREESTYLE's design, FREESTYLE's "invention" and encompasses FREESTYLE's protected trade dress; and

e. That the "business that took off[5]" as a result of the Lazy Z slide concept was FUNAIR's when in actuality it was FREESTYLE's business that took off.

90.    Such statements were clearly made by ANASTASIA as the driving force behind such statements and behind such conduct.    ANASTASIA is the person who authorized, approved and authored the false and misleading statements.

91.    FUNAIR and ANASTASIA both knew or should have known that making such false and misleading statements would likely result in deceiving consumers and damaging FREESTYLE's business.

92.    FREESTYLE has already and will continue to be injured as a direct result of such false and misleading statements.

93.    All conditions precedent to the institution and maintenance of this action has occurred or has been performed.

94.    Plaintiff has retained the undersigned attorneys to represent it in this action and has agreed to pay them a reasonable fee for their services.

---

[2] *See* Exhibit "F."
[3] A true and correct copy of this advertisement, which was found in Invictus Magazine, Issue 9 – Fall 2014, is attached hereto as Exhibit "G."
[4] *See* Exhibit "G" at page 1.
[5] *See* Exhibit "G" at page 4.

<u>COUNT I</u>
<u>COMMON LAW TRADE DRESS INFRINGEMENT OF CRUISER NLS+™</u>
<u>(15 U.S.C. 1114(a))</u>
<u>(AGAINST FUNAIR, NATIONAL MARINE AND ANASTASIA)</u>

95.     Plaintiff repeats and alleges paragraphs 13-16, 19-32, 33, 43-45, 50-60 and 80-87 of this Complaint as if fully stated herein.

96.     Plaintiff is the owner of common law trade dress to Plaintiff's CRUISER NLS+™ inflatable yacht slide.

97.     Plaintiff's trade dress in its CRUISER NLS+™ slides includes a three dimensional inflatable slide with staggered-length tubes running down the sides of the slide wherein the staggered-length support tubes end in the shape of a triangle.

98.     Plaintiff's trade dress is primarily non-functional and has acquired secondary meaning in the marketplace.

99.     Defendants' acts of marketing and selling a nearly identical and infringing inflatable yacht slide constitute trade dress infringement in violation of 15 U.S.C. §1125(a).

100.    Defendants' act as described above constitute unfair trade practices in violation of the common law of the State of Florida by passing off Defendants' goods as those of Plaintiff, by competing unfairly, and by employing deceptive trade practices.

101.    Defendants' activities are causing a likelihood of confusion or misunderstanding as to the affiliation, connection or association of Defendants' products with Plaintiff, and by representing that Defendants' goods have sponsorship, approval, characteristics, uses, or benefits that it does not have.

102.    Defendant ANASTASIA is the central figure behind the infringing conduct; authorized and approved the infringing conduct; and is the driving force behind the infringing conduct.

103.    Defendants have unjustly profited by their unlawful actions.

104.    Defendants' acts as described above were willful and deliberate.

105.    Defendants' acts of infringement have caused great and irreparable harm to Plaintiff, and, unless restrained, will cause further irreparable injury leaving Plaintiff with no adequate remedy at law.

106.    Monetary damages will not provide full and adequate relief for all of Plaintiff's injuries from Defendants' unlawful conduct and Plaintiff is therefore entitled to an injunction pursuant to 15 U.S.C. §1116.

107.    Under 15 U.S.C. § 1117, Plaintiff is further entitled to recover: 1) all of Defendants' profits and gains obtained as a result of Defendants' violations of 15 U.S.C. § 1125(a); 2) all damages suffered by FREESTYLE as a result of Defendants' violations of 15 U.S.C. § 1125(a); and, 3) all costs of this action.

108.    As a result of Defendants' willfully egregious conduct, Plaintiff believes that this is an exceptional case which entitles Plaintiff to recover additional damages and reasonable attorney fees pursuant to 15 U.S.C. §1117.

**COUNT II**
**COMMON LAW TRADE DRESS INFRINGEMENT OF CRUISER CS™**
**(15 U.S.C. 1125(a))**
**(AGAINST FUNAIR, NATIONAL MARINE AND ANASTASIA)**

109.    Plaintiff repeats and alleges paragraphs 13-16, 19-32, 38-41, 50-60 and 80-87 of this Complaint as if fully stated herein.

110.    Plaintiff is the owner of all right, title and interest in and to the trade dress of the CRUISER CS™ inflatable slide.

111.    Plaintiff's trade dress in its CRUISER CS™ inflatable slide includes a three dimensional inflatable slide with the backwards c-shaped curve wherein the side tubes end in the

shape of a triangle and there is a lattice structure underneath the slide in the middle portion of the slide.

112.    Plaintiff's trade dress is primarily non-functional and has acquired secondary meaning in the marketplace.

113.    Defendants' acts of marketing and selling a nearly identical and infringing inflatable yacht slide constitute trade dress infringement in violation of 15 U.S.C. §1125(a).

114.    Defendants' act as described above constitute unfair trade practices in violation of the common law of the State of Florida by passing off Defendants' goods as those of Plaintiff, by competing unfairly, and by employing deceptive trade practices.

115.    Defendants' activities are causing a likelihood of confusion or misunderstanding as to the affiliation, connection or association of Defendants' products with Plaintiff, and by representing that Defendants' goods have sponsorship, approval, characteristics, uses, or benefits that it does not have.

116.    Defendant ANASTASIA is the central figure behind the infringing conduct; authorized and approved the infringing conduct; and is the driving force behind the infringing conduct.

117.    Defendants have unjustly profited by their unlawful actions.

118.    Defendants' acts as described above were willful and deliberate.

119.    Defendants' acts of infringement have caused great and irreparable harm to Plaintiff, and, unless restrained, will cause further irreparable injury leaving Plaintiff with no adequate remedy at law.

120.    Monetary damages will not provide full and adequate relief for all of Plaintiff's injuries from Defendants' unlawful conduct and Plaintiff is therefore entitled to an injunction pursuant to 15 U.S.C. §1116.

121.    Under 15 U.S.C. § 1117, Plaintiff is further entitled to recover: 1) all of Defendants' profits and gains obtained as a result of Defendants' violations of 15 U.S.C. § 1125(a); 2) all damages suffered by FREESTYLE as a result of Defendants' violations of 15 U.S.C. § 1125(a); and 3) all costs of this action.

122.    As a result of Defendants' willfully egregious conduct, Plaintiff believes that this is an exceptional case which entitles Plaintiff to recover additional damages and reasonable attorney fees pursuant to 15 U.S.C. §1117.

**COUNT III**
**COMMON LAW TRADE DRESS INFRINGEMENT OF CRUISER LS™**
**(15 U.S.C. 1125(a))**
**(AGAINST FUNAIR, NATIONAL MARINE AND ANASTASIA)**

123.    Plaintiff repeats and alleges paragraphs 13-16, 19-32, 46-60 and 80-87 of this Complaint as if fully stated herein.

124.    Plaintiff is the owner of all right, title and interest in and to the trade dress of the CRUISER LS™ inflatable slide.

125.    Plaintiff's trade dress in its CRUISER LS™ inflatable slide includes a three dimensional inflatable slide with staggered-length tubes running down the sides of the slide wherein the staggered-length support tubes end in the shape of a triangle and the support beam underneath is in the shape of an "L".

126.    Plaintiff's trade dress is primarily non-functional and has acquired secondary meaning in the marketplace.

127.    Defendants' acts of marketing and selling a nearly identical and infringing inflatable yacht slide constitute trade dress infringement in violation of 15 U.S.C. §1125(a).

128.    Defendants' act as described above constitute unfair trade practices in violation of the common law of the State of Florida by passing off Defendants' goods as those of Plaintiff, by competing unfairly, and by employing deceptive trade practices.

129.    Defendants' activities are causing a likelihood of confusion or misunderstanding as to the affiliation, connection or association of Defendants' products with Plaintiff, and by representing that Defendants' goods have sponsorship, approval, characteristics, uses, or benefits that it does not have.

130.    Defendant ANASTASIA is the central figure behind the infringing conduct; authorized and approved the infringing conduct; and is the driving force behind the infringing conduct.

131.    Defendants have unjustly profited by their unlawful actions.

132.    Defendants' acts as described above were willful and deliberate.

133.    Defendants' acts of infringement have caused great and irreparable harm to Plaintiff, and, unless restrained, will cause further irreparable injury leaving Plaintiff with no adequate remedy at law.

134.    Monetary damages will not provide full and adequate relief for all of Plaintiff's injuries from Defendants' unlawful conduct and Plaintiff is therefore entitled to an injunction pursuant to 15 U.S.C. §1116.

135.    Under 15 U.S.C. § 1117, Plaintiff is further entitled to recover: 1) all of Defendants' profits and gains obtained as a result of Defendants' violations of 15 U.S.C. §

1125(a); 2) all damages suffered by FREESTYLE as a result of Defendants' violations of 15 U.S.C. § 1125(a); and 3) all costs of this action.

136.    As a result of Defendants' willfully egregious conduct, Plaintiff believes that this is an exceptional case which entitles Plaintiff to recover additional damages and reasonable attorney fees pursuant to 15 U.S.C. §1117.

**COUNT IV**
**COMMON LAW TRADE DRESS INFRINGEMENT OF THE TRIPPO®**
**(15 U.S.C. 1125(a))**
**(AGAINST FUNAIR AND ANASTASIA)**

137.    Plaintiff repeats and alleges paragraphs 13-16, 19-37, 50-60 and 80-87 of this Complaint as if fully stated herein.

138.    Plaintiff is the owner of all right, title and interest in and to the trade dress of the TRIPPO® inflatable slide.

139.    Plaintiff's trade dress in its TRIPPO®  inflatable slide includes a three dimensional inflatable slide with three lanes that all meet at the top, a crown-like configured landing bed, and a lattice structure underneath the slide and on the back portion of the slide, is Plaintiff's trade dress and emanates from Plaintiff.

140.    Plaintiff's trade dress is primarily non-functional and has acquired secondary meaning in the marketplace.

141.    Defendants' acts of marketing and selling a nearly identical and infringing inflatable land-based slide constitute trade dress infringement in violation of 15 U.S.C. §1125(a).

142.    Defendants' act as described above constitute unfair trade practices in violation of the common law of the State of Florida by passing off Defendants' goods as those of Plaintiff, by competing unfairly, and by employing deceptive trade practices.

143.    Defendants' activities are causing a likelihood of confusion or misunderstanding as to the affiliation, connection or association of Defendants' products with Plaintiff, and by representing that Defendants' goods have sponsorship, approval, characteristics, uses, or benefits that it does not have.

144.    Defendant ANASTASIA is the central figure behind the infringing conduct; authorized and approved the infringing conduct; and is the driving force behind the infringing conduct.

145.    Defendants have unjustly profited by their unlawful actions.

146.    Defendants' acts as described above were willful and deliberate.

147.    Defendants' acts of infringement have caused great and irreparable harm to Plaintiff, and, unless restrained, will cause further irreparable injury leaving Plaintiff with no adequate remedy at law.

148.    Monetary damages will not provide full and adequate relief for all of Plaintiff's injuries from Defendants' unlawful conduct and Plaintiff is therefore entitled to an injunction pursuant to 15 U.S.C. §1116.

149.    Under 15 U.S.C. § 1117, Plaintiff is further entitled to recover: 1) all of Defendants' profits and gains obtained as a result of Defendants' violations of 15 U.S.C. § 1125(a); 2) all damages suffered by FREESTYLE as a result of Defendants' violations of 15 U.S.C. § 1125(a); and 3) all costs of this action.

150.    As a result of Defendants' willfully egregious conduct, Plaintiff believes that this is an exceptional case which entitles Plaintiff to recover additional damages and reasonable attorney fees pursuant to 15 U.S.C. §1117.

## COUNT V
## COPYRIGHT INFRINGEMENT OF CRUISER CS™ TECHNICAL DRAWINGS
### (17 U.S.C. §101 *et. seq.*)
### (AGAINST ANASTASIA AND FUNAIR)

151.    Plaintiff repeats and makes a part hereof each and every allegation contained in paragraphs 61-71 and 76-81 the Complaint.

152.    Plaintiff owns all right title and interest in and to the copyright in the CRUISER CS™ technical drawings attached hereto as Exhibit "A."

153.    Plaintiff has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

154.    Defendant, ANASTASIA, had access to the CRUISER CS technical drawings when working as an employee for FREESTYLE.

155.    Defendants, ANASTASIA and FUNAIR's conduct as set forth herein has been without the permission, consent or license of Plaintiff.

156.    Without authorization from Plaintiff, ANASTASIA and FUNAIR violated Plaintiff's exclusive rights under 17 U.S.C. §106(a) by copying and reproducing the copyrighted work and preparing derivative works based on the copyrighted work.

157.    Defendant, ANASTASIA personally participated in the infringement and derived a financial benefit from the infringement.

158.    Upon information and belief, Defendants copied, used and made derivative works of the copyrighted works to assist with selling and promoting the infringing slides sold by FUNAIR.

159.    Defendants' intentional reproduction, copying and creation of derivative works was willful and without authorization from Plaintiff and are direct violations of Plaintiff's copyright.

160.    The aforesaid acts of Defendants constitute infringement of the Registered work and violate 17 U.S.C. §501.

161.    Plaintiff has been and continues to be damaged by Defendants' infringement.

162.    Plaintiff has no adequate remedy at law.

163.    Defendants' copyright infringement has caused, and will continue to cause, irreparably injury to Plaintiff if Defendants are not permanently enjoined by this Court from further violation of Plaintiff's copyrighted work.

## COUNT VI
## COPYRIGHT INFRINGEMENT OF CRUISER NLS+™ TECHNICAL DRAWINGS
### (17 U.S.C. §101 *et. seq.*)
### (AGAINST ANASTASIA AND FUNAIR)

164.    Plaintiff repeats and makes a part hereof each and every allegation contained in paragraphs 61-71 and 76-81 the Complaint.

165.    Plaintiff owns all right title and interest in and to the copyright in the CRUISER NLS+™ technical drawings attached hereto as Exhibit "B."

166.    Plaintiff has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

167.    Defendant, ANASTASIA, had access to the CRUISER NLS+ technical drawings when working as an employee for FREESTYLE.

168.    Defendants, ANASTASIA and FUNAIR's conduct as set forth herein has been without the permission, consent or license of Plaintiff.

169.    Without authorization from Plaintiff, ANASTASIA and FUNAIR violated Plaintiff's exclusive rights under 17 U.S.C. §106(a) by copying and reproducing the copyrighted work and preparing derivative works based on the copyrighted work.

170.    Defendant, ANASTASIA personally participated in the infringement and derived a financial benefit from the infringement.

171.    Upon information and belief, Defendants copied, used and made derivative works of the copyrighted works to assist with selling and promoting the infringing slides sold by FUNAIR.

172.    Defendants' intentional reproduction, copying and creation of derivative works was willful and without authorization from Plaintiff and are direct violations of Plaintiff's copyright.

173.    The aforesaid acts of Defendants constitute infringement of the Registered work and violate 17 U.S.C. §501.

174.    Plaintiff has been and continues to be damaged by Defendants' infringement.

175.    Plaintiff has no adequate remedy at law.

176.    Defendants' copyright infringement has caused, and will continue to cause, irreparably injury to Plaintiff if Defendants are not permanently enjoined by this Court from further violation of Plaintiff's copyrighted work.

## COUNT VII
## COPYRIGHT INFRINGEMENT OF CRUISER SS™ TECHNICAL DRAWINGS
## (17 U.S.C. §101 *et. seq.*)
## (AGAINST ANASTASIA AND FUNAIR)

177.    Plaintiff repeats and makes a part hereof each and every allegation contained in paragraphs 61-71 and 76-81 the Complaint.

178.    Plaintiff owns all right title and interest in and to the copyright in the CRUISER SS™ technical drawings attached hereto as Exhibit "C."

179.    Plaintiff has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

180.    Defendant, ANASTASIA, had access to the CRUISER SS technical drawings when working as an employee for FREESTYLE.

181.    Defendants, ANASTASIA and FUNAIR's conduct as set forth herein has been without the permission, consent or license of Plaintiff.

182.    Without authorization from Plaintiff, ANASTASIA and FUNAIR violated Plaintiff's exclusive rights under 17 U.S.C. §106(a) by copying and reproducing the copyrighted work and preparing derivative works based on the copyrighted work.

183.    Defendant, ANASTASIA personally participated in the infringement and derived a financial benefit from the infringement.

184.    Upon information and belief, Defendants copied, used and made derivative works of the copyrighted works to assist with selling and promoting the infringing slides sold by FUNAIR.

185.    Defendants' intentional reproduction, copying and creation of derivative works was willful and without authorization from Plaintiff and are direct violations of Plaintiff's copyright.

186.    The aforesaid acts of Defendants constitute infringement of the Registered work and violate 17 U.S.C. §501.

187.    Plaintiff has been and continues to be damaged by Defendants' infringement.

188.    Plaintiff has no adequate remedy at law.

189.    Defendants' copyright infringement has caused, and will continue to cause, irreparably injury to Plaintiff if Defendants are not permanently enjoined by this Court from further violation of Plaintiff's copyrighted work.

## COUNT VIII
## FALSE AND MISLEADING ADVERTISING (15 U.S.C. §1125(a)(1)(b)) (AGAINST FUNAIR AND ANASTASIA)

190.    Plaintiff repeats and makes a part hereof each and every allegation contained in paragraphs 18-23, 38-49 and 88-91 of the Complaint.

191.    Via their advertising and other commercial activities, Defendants have made and distributed within interstate commerce false and misleading statements of fact regarding their own products.  These literally false statements include: (a) That ANASTASIA turned heads "with the first sealed air inflatable slide that hooks over yacht railings in 2009[6]," when in actuality it was FREESTYLE that came out with the first yacht slide in 2009; (b) That FUNAIR "has created more than 200 custom slides for super yachts across the globe[7]," when in actuality a large portion of those slides were created by FREESTYLE, not FUNAIR; (c) That ANASTASIA is the "inventor of the yacht slide[8]," when in actuality it is FREESTYLE that came up with the first design for the yacht slide and is thus the "inventor," not ANASTASIA; (d) That the yacht slide created for Lazy Z was ANASTASIA's "design" and his "invention[9]," when in actuality it was FREESTYLE's design, FREESTYLE's "invention" and encompasses FREESTYLE's protected trade dress; and  (e) That the "business that took off[10]" as a result of the Lazy Z slide concept was FUNAIR's when in actuality it was FREESTYLE's business that took off.

192.    These statements are false, misleading descriptions and representations of fact which misrepresent and deceive consumers and potential consumers as to the nature;

---

[6] A true and correct copy of this false and misleading statement on ANASTASIA's profile page on www.funair.com is attached hereto as Exhibit "F".
[7] *See* Exhibit "F."
[8] A true and correct copy of this advertisement, which was found in Invictus Magazine, Issue 9 – Fall 2014, is attached hereto as Exhibit "G."
[9] *See* Exhibit "G" at page 1.
[10] *See* Exhibit "G" at page 4.

characteristics and qualities of FUNAIR's products and therefore these statements are material to the purchasing public.

193.   These statements were made in the course of commercial advertising and had a material impact on customer's purchasing decisions.

194.   FUNAIR's products affect interstate commerce in that FUNAIR's inflatable slides are sold all across the United States.

195.   Plaintiff has already been harmed by such false statements in that customers who would have purchased FREESTYLE 's inflatable slides have purchased FUNAIR's inflatable slide because of such false statements, and this harm will continue unless and until FUNAIR and ANASTASIA are stopped.

196.   Defendants' aforesaid statements violate 15 U.S.C. § 1125(a)(1)(b).

197.   Plaintiff is entitled to an injunction under 15 U.S.C. § 1116 to restrain Defendants from making further false statements in their advertising and promotional activities, while also ordering the removal of Defendants' false advertisements.

198.   Under 15 U.S.C. § 1117, Plaintiff is further entitled to recover: 1) all of Defendants' profits and gains obtained as a result of Defendants' violations of 15 U.S.C. § 1125(a); 2) all damages suffered by FREESTYLE as a result of Defendants' violations of 15 U.S.C. § 1125(a); and 3) all costs of this action.

199.   As a result of Defendants' willfully egregious conduct, Plaintiff believes that this is an exceptional case which entitles Plaintiff to recover additional damages and reasonable attorney fees pursuant to 15 U.S.C. §1117.

## COUNT IX
## MISLEADING ADVERTISING (FLA. STAT. §817.41)
## (AGAINST FUNAIR AND ANASTASIA)

200.    Plaintiff repeats and makes a part hereof each and every allegation contained in paragraphs 18-23, 38-49 and 88-91 of the Complaint.

201.    Via their advertising and other commercial activities, Defendants have made and distributed within interstate commerce false and misleading statements of fact regarding their own products. These literally false statements include: (a) That ANASTASIA came up "with the first sealed air inflatable slide that hooks over yacht railings in 2009[11]," when in actuality it was FREESTYLE that turned heads with the first yacht slide in 2009; (b) That FUNAIR "has created more than 200 custom slides for super yachts across the globe[12]," when in actuality a large portion of those slides were actually created by FREESTYLE, not FUNAIR; (c) That ANASTASIA is the "inventor of the yacht slide[13]," when in actuality it is FREESTYLE that came up with the first design for the yacht slide and is thus the "inventor," not ANASTASIA; (d) That the yacht slide created for Lazy Z was ANASTASIA's "design" and his "invention[14]," when in actuality it was FREESTYLE's design, FREESTYLE's "invention" and encompasses FREESTYLE's protected trade dress; and  (e) That the "business that took off[15]" as a result of the Lazy Z slide concept was FUNAIR's when in actuality it was FREESTYLE's business that took off.

202.    These were all false statement made regarding a material fact and both FUNAIR and ANASTASIA knew that such statements were false when they made them.

---

[11] A true and correct copy of this false and misleading statement on ANASTASIA's profile page on www.funair.com is attached hereto as Exhibit "F."

[12] *See* Exhibit "F."

[13] A true and correct copy of this advertisement, which was found in Invictus Magazine, Issue 9 – Fall 2014, is attached hereto as Exhibit "G."

[14] *See* Exhibit "G" at page 1.

[15] *See* Exhibit "G" at page 4.

203. FUNAIR and ANASTASIA made such false statements intending for their customers to rely on the statements and made purchasing decisions based on such false statements.

204. FREESTYLE and FUNAIR are fierce competitors in the industry, and FREESTYLE sells the exact type of products that FUNAIR sells, including the products related to the false and misleading statements, to the same/similar customers through the same channels of trade except that FREESTYLE was the first to create and sell such products and owns trade dress and copyright protection for various aspects of its slides.

205. FREESTYLE has already been harmed by such false statements in that customers that would have purchased FREESTYLE's products have purchased FUNAIR's products because of such false statements and this harm will continue unless and until FUNAIR and ANASTASIA are stopped.

206. Defendants' aforesaid statements violate Fla. Stat. §817.41.

207. Plaintiff is entitled to its costs, reasonable attorney's fees and actual damages proven pursuant to Fla. Stat. §817.41(6).

## COUNT X
## DECEPTIVE AND UNFAIR TRADE PRACTICES (FLA. STAT. §§501.201 *et. seq.*)
## (AGAINST FUNAIR AND ANASTASIA)

208. Plaintiff repeats and makes a part hereof each and every allegation contained in paragraphs 13-91 of the Complaint.

209. The actions of Defendant FUNAIR, through the direction and control and with the actual knowledge of ANASTASIA, including but not limited to, infringing on Plaintiff's trade dress and copyright, making false and misleading statements to Plaintiff's detriment, converting Plaintiff's confidential and proprietary information and competing unfairly in the marketplace

constitute deceptive and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

210.   Defendants' intentional and unjustifiable actions are not only violations of FDUTPA, but are also violations of 15 U.S.C. §1114, 15 U.S.C. §1125(a)(1)(b), Fla. Stat. §817.41, 17 U.S.C. §101 and Fla. Stat.§ 688.02.

211.   By reason of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer irreparable harm in that Plaintiff is losing business to FUNAIR as a result of such false statements and Plaintiff's reputation is being damaged as a direct and proximate result of such statements.

212.   Accordingly, Plaintiff is entitled to an injunction against Defendants, pursuant to Fla. Stat. §501.211(1).

213.   Plaintiff is aggrieved by Defendants' unlawful actions and has suffered and continues to suffer losses and is therefore entitled to recover all actual damages sustained as a result of Defendants' actions, plus attorney's fees and court costs pursuant to Fla. Stat. §501.211(2) and §501.2105.

## COUNT XI
## CIVIL CONSPIRACY
## (AS TO ALL DEFENDANTS)

214.   Plaintiff repeats and makes a part hereof each and every allegation contained in paragraphs 17-32 and 72-91 of the Complaint.

215.   This is an action against all Defendants for conspiring to infringe on Plaintiff's intellectual property, misappropriate Plaintiff's confidential and proprietary information and divert business from Plaintiff and to Defendants.

216.   Defendants had no right to use Plaintiff's confidential and proprietary information in furtherance of their respective businesses.

217.   On information and belief, ANASTASIA and GOLDREYER agreed to partner together to form a competing business (FUNAIR) and to utilize a former FREESTYLE dealer (NATIONAL MARINE) as its primary dealer in the United States.  A part of the development of this competing business and business relationship with NATIONAL MARINE, ANASTASIA converted or otherwise misappropriated FREESTYLE's proprietary and confidential information, including, but not limited to, customer lists, customer ordering history, CAD drawings and technical drawings.

218.   On information and belief, all Defendants were aware that such information was misappropriated from FREESTYLE.

219.   On information and belief, all Defendants took steps in furtherance of this plan by actually utilizing the misappropriated information to contact FREESTYLE's customers and to use the CAD and technical drawings to advertise and promote FUNAIR's products in or around mid-2014 and to manufacture and selling slides which are infringing on FREESTYLE's trade dress.

220.   Plaintiff has been damaged as a result of the conspiracy.

### COUNT XII
### CONVERSION
### (AS TO ALL DEFENDANTS)

221.   Plaintiff repeats and makes a part hereof each and every allegation contained in 18-23 and 72-81 of the Complaint.

222.   Defendants have wrongfully converted Plaintiff's proprietary and confidential information, including, but not limited to, customer lists, customer ordering history, CAD

drawings and technical drawings for their own benefit and with the intent to either temporarily or permanently deprive Plaintiff of the right to the property or a benefit from the property.

223.    Plaintiff has been damaged as a result of the conversion.

**COUNT XIII**
**COMMON LAW UNJUST ENRICHMENT**
**(AS TO ALL DEFENDANTS)**

224.    Plaintiff repeats and makes a part hereof each and every allegation contained in paragraphs 13-91 of the Complaint.

225.    Defendants have wrongfully converted Plaintiff's proprietary and confidential information, including, but not limited to, customer lists, customer ordering history, CAD drawings and technical drawings for their own benefit and with the intent to either temporarily or permanently deprive Plaintiff of the right to the property or a benefit from the property.

226.    Defendants have individually and collectively received unlawful gains from the misconduct enumerated above, including without limitation Defendants' conspiracy, conversion, trade dress infringement and copyright infringement.

227.    Defendants have acted knowingly, willfully and unlawfully with the intent to injure Plaintiff.

228.    Plaintiff has been damaged as a result of the conduct alleged herein.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court find in its favor and against Defendants, SUPER SWEET AIR, INC., d/b/a FUNAIR, NATIONAL MARINE SUPPLIERS, INC., MARK ANASTASIA and ERIC GOLDREYER and that the Court grant Plaintiff the following relief:

A.     An adjudication that Defendants FUNAIR's, NATIONAL MARINE's and ANASTASIA's actions constitute trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a);

B.     An adjudication that Defendants ANASTASIA and FUNAIR's actions constitute copyright infringement under 17 U.S.C. §101;

C.     An adjudication that Defendants FUNAIR's and ANASTASIA's actions constitute false advertising under the Lanham Act, 15 U.S.C. §1125(a)(1)(b);

D.     An adjudication that Defendants FUNAIR's and ANASTASIA's actions constitute misleading advertising under Fla. Stat. §817.41;

E.     An adjudication that Defendants, FUNAIR and ANASTASIA's actions constitute deceptive and unfair trade practices under Fla. Stat. §501.201 *et. seq.;*

F.     An adjudication that all Defendants' actions constitute conversion, unjust enrichment and civil conspiracy;

G.     An injunction under 15 U.S.C. § 1116 to restrain Defendants from making further false statements in advertising and promotional activities, while also ordering the removal of Defendants' false advertisements from Defendant FUNAIR's website as well as any printed materials;

H.     An award under 15 U.S.C. § 1117 of 1) all of Defendants' profits and gains obtained as a result of Defendants' violations of 15 U.S.C. § 1125(a); 2) all damages suffered by FREESTYLE by Defendants' violations of 15 U.S.C. § 1125(a); and 3) all costs of this action;

I.     A ruling that as a result of Defendants' willfully egregious conduct, this is an exceptional case which entitles Plaintiff to recover additional damages and reasonable attorney fees pursuant to 15 U.S.C. §1117;

J.      An award of Plaintiff's costs, reasonable attorney's fees, and actual damages proven pursuant to Fla. Stat. §817.41(6);

K.      An award of Plaintiff's actual damages and costs pursuant to 17 U.S.C. §504;

L.      An injunction pursuant to 17 U.S.C. §502;

M.      Plaintiff is entitled to recover all infringing copies of the copyrighted works in Defendants' possession, custody or control or said infringing copies may be destroyed under a Writ of Destruction issued under 17 U.S.C. §103, whichever shall be deemed just and proper.

N.      An award of damages adequate to compensate FREESTYLE for the injury caused as a result of Defendants' conspiracy, conversion and unjust enrichment;

O.      Attorney's fees pursuant to Fla. Stat. §501.2105;

P.      Plaintiff is further entitled to recover actual damages sustained in consequence of Defendants' willful and wrongful conduct, in an amount to be determined.

Q.      Plaintiff is further entitled to its costs.

R.      Any further relief that this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this 31st day of January, 2017.

Respectfully submitted,

Beusse Wolter Sanks & Maire, PLLC
390 North Orange Avenue, Suite 2500
Orlando, Florida  32801
Telephone: (407) 926-7716

Facsimile: (407) 926-7720
E-mail: adavis@bwsmiplaw.com
E-mail: kwimberly@bwmsiplaw.com
*Attorneys for Plaintiff, Freestyle Slides, Inc.*

Amber N. Davis
Florida Bar No: 0026628
Kevin W. Wimberly
Florida Bar No: 0057977